IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GREGORY ALLEN BONNIE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:23-cv-01215-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| R.S. DUNBAR, *Warden*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Thomas E. Rogers, III's report and recommendation ("R&R"), ECF No. 50, that the court grant defendant R.S. Dunbar's ("Warden Dunbar") motion to dismiss or, alternatively, for summary judgment, ECF No. 20. For the reasons set forth below, the court adopts the R&R in full and grants Warden Dunbar's motion for summary judgment.

## I.  BACKGROUND

Petitioner Gregory Allen Bonnie ("Bonnie") is an inmate designated by the Federal Bureau of Prisons ("BOP") to serve his sentence at the Satellite Prison Camp adjacent to Federal Correctional Institution Williamsburg ("FCI Williamsburg") in Salters, South Carolina.[1]  He filed this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the BOP is denying him time credits he earned under the First Step Act of 2018 ("FSA"), 18 U.S.C. § 3632(d)(4)(A), Pub. L. 115-391, 132

---

[1] The background for this case is gleaned from a combination of the initial petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF No. 1; from Warden Dunbar's motion for summary judgment, ECF No. 16; and from the magistrate judge's R&R, ECF No. 23.

1

Stat. 5194, for his participation in Evidence-Based Recidivism Reduction ("EBRR")

programming.  ECF No. 1, Pet.

The FSA governs the calculation of federal prison sentences.  Eligible federal

inmates may earn additional good time credits under the FSA.  18 U.S.C. § 3624(b).  One

way those eligible inmates may earn good time credits is through completion of EBRR

programming, which allows that inmate to earn time credits to be applied toward time in

pre-release custody or supervised release.  See 18 U.S.C. § 3632(d)(4)(A).  However, a

prisoner is ineligible to receive time credits if the prisoner is serving a sentence for a

disqualifying offense.  See 18 U.S.C. § 3632(d)(4)(D).  Relevant here, a "prisoner is

ineligible to receive time credits under this paragraph if the prisoner is serving a sentence

for a conviction" under § 924(c), "relating to unlawful possession or use of a firearm

during and in relation to any crime of violence or drug trafficking crime."  18 U.S.C.

§ 3632(d)(4)(D)(xxii).  Bonnie is currently imprisoned after he pleaded guilty to two

criminal sentences for separate offenses.  He pleaded guilty to drug distribution offenses

as well as possession of a firearm in violation of § 924(c) in his first offense.[2]  United

---

[2] On November 10, 2005, the court entered judgment against Bonnie after he
pleaded guilty to two counts of the superseding indictment in criminal case United States
v. Bonnie ("USA v. Bonnie I"), No. 2:04-cr-00546-DCN-1 (D.S.C. Nov. 10, 2005), ECF
No. 106.  Specifically, he pleaded guilty to engaging in a conspiracy with two
codefendants to manufacture, possess, and distribute methamphetamine and to possess
and distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), 846,
851.  USA v. Bonnie I, ECF Nos. 36; 106.  He also pleaded guilty to possession of
firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C.
§ 924(c)(1)(A)(i).  USA v. Bonnie I, ECF Nos. 36; 106.  The court sentenced Bonnie to a
180-month term which consisted of 120 months for Count 1 and 60 months for Count 6,
to run consecutively.  USA v. Bonnie I, ECF No. 106.  The court also stipulated that upon
release from imprisonment, Bonnie was to be placed on supervised release for eight
years.  Id.  On June 7, 2017, the court placed Bonnie on supervised release.  See USA v.
Bonnie I, ECF Nos. 144; 147.  On May 27, 2021, the court revoked Bonnie's supervised
release and imposed a 24-month sentence for each count, to run concurrently with each

States v. Bonnie ("USA v. Bonnie I"), No. 2:04-cr-00546-DCN-1 (D.S.C. Nov. 1, 2005),

ECF No. 106.  For his second offense, Bonnie pleaded guilty to a conspiracy to possess

and distribute illicit drugs as well as possession with intent to distribute heroin and

methamphetamine on a specific date.[3]  United States v. Bonnie, ("USA v. Bonnie II"),

No. 2:19-cr-0060-DCN-3 (D.S.C. May 27, 2021), ECF No. 1128.  Bonnie's conviction

for violation of § 924(c) makes him ineligible for FSA time credit for EBRR

programming.  See 18 U.S.C. § 3632(d)(4)(D).  The parties dispute whether that

ineligibility only applies to his sentence for USA v. Bonnie I or to both that sentence and

the sentence imposed for USA v. Bonnie II, which are set to run consecutively.  As

Bonnie's counsel succinctly phrased it: "Does the 24-month § 924(c) revocation sentence

taint the separately imposed 120-month drug sentence such that Mr. Bonnie is ineligible

to earn FSA time credits for the entire 144-month sentence?"  ECF No. 39 at 8.

On March 27, 2023, Bonnie filed a petition for writ of habeas corpus.  ECF No. 1,

Pet.  Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(c)

(D.S.C.), all pretrial proceedings in this case were referred to Magistrate Judge Rogers.

On May 31, 2023, Warden Dunbar filed the instant motion to dismiss or, alternatively,

---

other, but consecutively to the term of imprisonment imposed in the second criminal case
described hereinafter.  USA v. Bonnie I, ECF No. 166.

[3] On May 27, 2021, the court entered judgment against Bonnie after he pleaded
guilty to two counts of the third superseding indictment in United States v. Bonnie
("USA v. Bonnie II"), No. 2:19-cr-0060-DCN-3 (D.S.C. May 27, 2021), ECF No. 1128.
Specifically, Bonnie pleaded guilty to engaging in a conspiracy with twelve codefendants
to possess with intent to distribute and to distribute heroin and methamphetamine in
violation of 21 U.S.C. §§ 846, 841(b)(1)(A).  USA v. Bonnie II, ECF Nos. 463; 1128.  He
also pleaded guilty to possessing with intent to distribute heroin and methamphetamine
on or about October 24, 2018, in violation of 21 U.S.C. § 841(b)(1)(B).  USA v. Bonnie
II, ECF Nos. 463; 1128.  The court sentenced Bonnie to a 120-month term for each count,
to run concurrently with each other, but consecutively with the term of imprisonment
imposed in USA v. Bonnie I.  USA v. Bonnie II, ECF No. 1128.

for summary judgment.  ECF No. 20.  On August 13, 2023, Bonnie responded in

opposition, ECF No. 39, to which Warden Dunbar replied on August 28, 2023, ECF No.

43.[4]  On January 16, 2024, Magistrate Judge Rogers issued the R&R recommending the

court grant Warden Dunbar's motion for summary judgment and dismiss the Petition.

ECF No. 50, R&R.  On February 14, 2024, Bonnie filed objections to the R&R.  ECF No.

54, to which Warden Dunbar responded on March 12, 2024, ECF No. 58.  As such, the

motion is fully briefed and is ripe for review.

## II.  STANDARD

### A.  Order on R&R

The recommendation of the magistrate judge carries no presumptive weight, and

the responsibility to make a final determination rests with this court.  Mathews v. Weber,

423 U.S. 261, 270–71 (1976).  The court may "accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate judge . . . or recommit the

matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is

charged with conducting a de novo review of any portion of the magistrate judge's report

and recommendation to which specific, written objections are made.  28 U.S.C.

§ 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of

the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).

---

[4] In explanation for the delay between the motion and responsive briefs, the
magistrate judge indicated that Bonnie's response filing deadline to the motion to dismiss
was extended until fifteen days after the court determined whether to grant or deny
Bonnie's motion to appoint counsel.  ECF No. 21.  Ultimately, Bonnie acquired legal
counsel separate from that motion, and, therefore, though his original petition was filed
pro se, Bonnie's subsequent response briefs were filed by his counsel.  See ECF Nos. 30;
38; 39; 54.

4

In the absence of a timely filed, specific objection, the court reviews the report and recommendation only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings. Id.

### B. Summary Judgment[5]

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing

---

[5] Warden Dunbar styled his motion as a motion to dismiss or, alternatively, as a motion for summary judgment. ECF No. 20. The magistrate judge treated it as a motion for summary judgment. R&R at 1. Neither party objects to the magistrate judge's treatment of the motion as one for summary judgment. See ECF Nos. 54 at 5 & n.9; 58. This court likewise considers it as a motion for summary judgment.

law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

#### A.  Administrative Exhaustion

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts have required prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. See Braden v. 30th Jud. Cir. Ct., 410 U.S. 484, 490–91 (1973) (requiring exhaustion in a § 2241 matter); Timms v. Johns, 627 F.3d 525, 531 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief" (internal quotation marks and citation omitted)). Exhaustion allows prison officials to develop a factual record and provides "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204 (2007).

The Attorney General, through the BOP, has responsibility for imprisoning federal offenders. United States v. Wilson, 503 U.S. 329, 331 (1992) (citing 18 U.S.C. § 3621(a)). This responsibility includes the calculation of an inmate's term of imprisonment, which is recognized as an "administrative purpose" well within the BOP's responsibilities as charged by Congress. See id. at 333–35. If the Attorney General,

through the BOP, does not give Bonnie the sentencing credit he believes he deserves, he can seek an administrative remedy.  See 28 C.F.R. § 542.10 (2014).  If Bonnie remains unsatisfied with the result upon exhausting his administrative remedies, he may file a petition under 28 U.S.C. § 2241.  See Wilson, 503 U.S. at 336.

Neither party contends that Bonnie has failed to exhaust his administrative remedies, and the court likewise finds them exhausted.  R&R at 3 n.2; ECF No. 54 at 4 (noting that the parties agree that Bonnie exhausted his administrative remedies with the BOP prior to filing this action).  Thus, Bonnie's § 2241 petition is properly before the court.

### B.  Statutory Interpretation of the FSA

The court begins with the sections of the FSA that the parties agree are unambiguous before reviewing those provisions where the parties' interpretations diverge.  Thereafter the court will "use 'traditional tools of statutory construction' to determine 'whether Congress has directly spoken to the precise question at issue.'" Julmice v. Garland, 29 F.4th 206, 207 (4th Cir. 2022) (quoting Prudencio v. Holder, 669 F.3d 472, 480 (4th Cir. 2012)).  "If—and only if—[the court's] interpretive toolkit leaves [it] with a genuine ambiguity do[es it] reach the second question, which asks whether the agency's considered views about the meaning of the statute are 'reasonable.'"  Id. (citing Prudencio, 669 F.3d at 480).  The court begins with the statute.

In 2018, the FSA amended 18 U.S.C. § 3621, governing federal prison sentences, and added related provisions in §§ 3624 and 3632 concerning recidivism reduction programming and incentives.  Except for inmates convicted of certain enumerated offenses, see 18 U.S.C. § 3632(d)(4)(D), or those with a final removal or deportation

7

order, id. § 3632(d)(4)(E), all inmates became eligible to earn up to ten (10) days of time credits for every thirty (30) days of successfully completed BOP-approved "Evidence-Based Recidivism Reduction Programs" ("EBRR") and "Productive Activities" ("PAS"), see id. § 3632(d)(4)(A)(i). Additionally, "[a] prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their [sic] risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in [EBRR] or [PAS]." See id. § 3632(d)(4)(A)(ii).

Among other incentives to encourage participation in EBRR and PAS, eligible inmates who have earned FSA time credits may apply those credits to their time in prerelease custody or supervised release. See id. § 3632(d)(1)–(4)(C). "Thus, FSA time credits, when applied, advance the date when the prisoner will be placed in prerelease custody (including home confinement or residential reentry facilities), or accelerate the date when the prisoner will leave BOP custody to start a term of court-imposed supervised release." De La Torre v. Warden, FCI McDowell, 2024 WL 1080499, at *3 (S.D. W. Va. Feb. 5, 2024) (internal quotation marks and citations omitted), report and recommendation adopted, 2024 WL 1078266 (S.D. W. Va. Mar. 12, 2024); see also 18 U.S.C. § 3624(g)(3) (specifying that the BOP may apply up to twelve months of earned time credits to advance a date a prisoner begins to serve a term of supervised release).

To reiterate, the FSA sets out statutory criteria defining who is eligible to earn and apply time credits for early release from secured custody. One category of inmates deemed ineligible to apply FTC credits towards earlier entry to prerelease custody or supervised release are inmates convicted of certain enumerated offenses. See 18 U.S.C.

8

§ 3632(d)(4)(D).  Specifically, "[a] prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law."  Id.  Relevant to this motion, one subsection includes persons convicted of violating § 924(c).  18 U.S.C. § 3632(d)(4)(D)(xxii).

When Congress enacted the FSA in December 2018, it did so against the backdrop of existing statutes, including 18 U.S.C. § 3584(c).[6]  In relevant part, § 3584 provides:

> (a) Imposition of concurrent or consecutive terms.—If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, . . .
>
> . . . .
>
> (c) Treatment of multiple sentence as an aggregate.—Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

18 U.S.C. § 3584.

This dispute centers on whether Bonnie is eligible, if at all, to receive FSA time credits under the language of the FSA.  "Bonnie does not dispute that if he were serving only the 24-month revocation sentence, he would be ineligible to earn time credits against that sentence."  ECF No. 54 at 2 n.3.  That is because revocation sentences are attributed to the original conviction which, here, includes a conviction for a § 924(c) offense.  Id.  However, the parties diverge as to whether his ineligible § 924(c) offense also impacts his eligible drug offense sentence that the court imposed in USA v. Bonnie II.  Bonnie argues that the court must look to the plain text of the statute, and then to the statutory

---

[6] Congress enacted 18 U.S.C. § 3584 in 1984.

context and the statute's purpose, which, together, lead to the unambiguous conclusion that Bonnie may receive FSA time credits for the sentence he received for <u>USA v. Bonnie II</u>. <u>See</u> ECF Nos. 39 at 12–22; 54 at 6–14. In contrast, the government emphasizes that 18 U.S.C. § 3632 of the FSA must be read alongside 18 U.S.C. § 3584, which, together, lead to the unambiguous conclusion that the BOP must aggregate Bonnie's sentences and find that his § 924(c) conviction renders him ineligible for <u>any</u> FSA time credits. ECF Nos. 43 at 3–13; 58 at 1, 3–4.

Magistrate Judge Rogers ultimately recommended that the court grant Warden Dunbar's motion for summary judgment and dismiss Bonnie's Petition. R&R at 13–14. The R&R first summarized the relevant facts, the parties' arguments, and the relevant legal background material to this dispute. <u>Id.</u> at 1–7. It noted that "[t]he Court which revoked Bonnie's term of supervised release and imposed additional prison time indicated that the reinstated sentence was to run consecutively to any sentence then-imposed." <u>Id.</u> at 8. Consequently, the BOP found Bonnie's ongoing prison sentence to be related to and stemming from his underlying conviction, which included a conviction under § 924(c). <u>Id.</u> On that basis, the BOP found Bonnie ineligible to earn time credits under the FSA. <u>Id.</u> Upon review of the facts, arguments, and legal authority, the magistrate judge recommended that this court find "BOP's interpretation of § 3632(d)(4)(D) . . . to be a mandatory interpretation based on the BOP's other statutory obligations." <u>Id.</u> (referencing 18 U.S.C. §§ 3632(d)(4)(D), 3584(c)). Under that interpretation, the BOP correctly found Bonnie to be ineligible to earn time credits under the FSA. <u>Id.</u> at 8–9. The magistrate judge then considered persuasive caselaw from other courts which considered similar facts and arguments. <u>Id.</u> at 9–13. He observed that those

10

courts consistently found petitioners ineligible for time credits under the FSA. <u>Id.</u>

Finally, the R&R alternatively noted that if this court were to find the statutory provisions

to be ambiguous, the court should find BOP's interpretation of the statute entitled to

<u>Chevron</u> deference.[7] <u>Id.</u> at 13. Under <u>Chevron</u>, the magistrate judge recommended that

the court find the BOP's interpretation reasonable such that the court should dismiss

Bonnie's petition. <u>Id.</u>

     Bonnie objects to the recommendation. ECF No. 54. He argues that the

magistrate judge made three critical errors. <u>Id.</u> at 2–3. First, the R&R ignored and failed

to analyze the unambiguous meaning of the FSA as is gleaned from the plain text,

statutory context, and statutory purpose of the act. <u>Id.</u> at 2, 6–12. Second, the R&R erred

by alternatively finding the BOP's interpretation entitled to <u>Chevron</u> deference when the

FSA is unambiguous. <u>Id.</u> at 2–3, 13–16. Third, the R&R improperly relied on a series of

unpublished cases that invoked the BOP's administration of discretionary prison

programs that predated the statutorily mandated FSA time credits. <u>Id.</u> at 3, 16–18. For

the foregoing reasons, Bonnie urges the court to reject the R&R and deny the motion. <u>Id.</u>

at 18.

     Warden Dunbar filed a reply to Bonnie's objections.[8] ECF No. 58. He

emphasizes that Bonnie incorrectly urges that court to ignore the mandate of 18 U.S.C.

---

[7] <u>Chevron, U.S.A., Inc. v. NRDC, Inc.</u>, 467 U.S. 837, 865 (1984). Courts defer to an agency's reasonable interpretation of a statute when Congress has "charged [the agency] with responsibility for administering the provision." <u>Id.</u> Bonnie notes that there is currently a pending decision from the Supreme Court which may modify <u>Chevron</u> deference. ECF No. 54 at 2–3 & n.4 (citing <u>Loper Bright Enters, Inc. v. Raimondo</u>, 45 F.4th 359, 374 (D.C. Cir. 2022), <u>cert. granted in part</u>, 143 S. Ct. 2429 (2023)).

[8] Warden Dunbar does not object to the magistrate judge's report and recommendation. ECF No. 58 at 5–6.

§ 3584(c) and its interplay with the FSA.  Id. at 1.  Moreover, Bonnie fails to address the fact that every court decision that has directly addressed this issue supports the BOP's position.  Id. at 2.  In essence, the passage of the FSA did not change that the BOP was, and is, responsible for determining sentencing credits.  Id. at 3.  Thus, the proper interpretation of the FSA with § 3584(c) indicates that Congress's silence as to how aggregated sentences would be treated under the FSA was not true silence because it reflected that § 3584(c) already existed and sufficiently answered that question.  Id. (citing Walton v. Fikes, 2023 WL 6283298, at *2 (D. Minn. Aug. 10, 2023), report and recommendation adopted, 2023 WL 6282897 (D. Minn. Sept. 26, 2023)).  Moreover, the cases that both the R&R and Warden Dunbar rely upon did not claim there was any ambiguity in the FSA—instead, those cases relied upon the administrative function of the BOP alongside the explicit statutory language included in § 3584(c).  Id. at 4.  In any event, even if the court were to find the statute ambiguous, Chevron remains good law such that BOP's reasonable interpretation of the statute should stand.  Id. at 5–6.  For these reasons, Warden Dunbar urges the court to adopt the R&R, grant the motion, and dismiss the petition.  Id.

The court begins by looking at the text of the statute.  The court then proceeds with "'all the traditional tools of construction,' emptying [its] interpretive toolbox[] by considering the 'text, structure, history, and purpose' of [the FSA]."  See Cela v. Garland, 75 F.4th 355, 361 (4th Cir. 2023) (quoting Kisor v. Wilkie, 139 S. Ct. 2400, 2415 (2019)).  Only after emptying the legal toolkit will the court reach the second step and look towards the BOP's interpretation.  See id.

### 1. Plain Text & Statutory Context

The court starts with the relevant statutory text.  First, the general provision as to FSA time credits broadly mandates access to time credits: "[a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes [EBRR] programming or [PAS], shall earn time credits."  18 U.S.C. § 3632(d)(4)(A) (emphasis added).  Second, the FSA defines "prisoner" as a "person who has been sentenced to a 'term of imprisonment' pursuant to a conviction for a Federal criminal offense, or a person in the custody of the [BOP]."  18 U.S.C. § 3635(4).  Third, the subparagraph defining ineligible offenses specifies that "[a] prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law."  18 U.S.C. § 3632(d)(4)(D).

Bonnie argues that the plain meaning of the FSA favors his interpretation.  ECF No. 54 at 6–8.  Bonnie highlights the distinction between a "term of imprisonment" in § 3635(4), and "serving a sentence" in § 3632(d)(4)(D).  ECF Nos. 54 at 7; 39 at 14.  He argues that the drafters of the FSA used different phrases to distinguish between the overall time spent in BOP custody—which Bonnie defines as "term of imprisonment"— versus the time spent in prison in connection with a particular conviction—which Bonnie defines as "serving a sentence for a conviction."  ECF Nos. 54 at 7; 39 at 14.  Bonnie emphasizes that the eligibility provision included in § 3632(d)(4)(D) is unique because it "is not drawn from any other statute, and it is not repeated elsewhere in the FSA."  ECF No. 54 at 7.  Bonnie interprets this language to mean that while he is not serving the § 924(c) revocation sentence, he is eligible to earn time credits under the plain language

13

of the FSA because he is a "prisoner" who is not "ineligible" under subparagraph D during that period.  Id.

In response, the government points to a persuasive decision where a court defined the word "sentence" as used in § 3632(d)(4)(D).  ECF No. 58 at 4 (citing Silva v. Warden, FCC Coleman-Low, 2024 WL 98212, at *2 (M.D. Fla. Jan. 9, 2024)).  In Silva, the court noted that the provision of time credits is an administrative function of the BOP.  2024 WL 98212, at *2.  Therefore, since § 3632(d)(4)(D) addresses an inmate's eligibility to earn FSA time credits, the statutory provision implicates the BOP's administrative function, and therefore the word "sentence" included in that statutory provision "cannot be defined without reference to § 3584(c)'s aggregation mandate."  Id.  Though § 3632 may be silent as to the definition of "sentence," the Silva court's interpretation "is the only one that harmonizes sections 3632 and 3584."  Id.  Thus, the court found that deference to the BOP's interpretation of "sentence" as a single, aggregated term was unnecessary where "the BOP's interpretation is not only reasonable, but 'required' by § 3584."  Id.  The court concluded by noting that "[w]hen only one interpretation is permissible, the statute is not ambiguous."  Id.

The difference in terms—§ 3632(d)(4)(D)'s "serving a sentence for a conviction" and § 3584(c)'s "term of imprisonment"—is a meaningless distinction.  "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  Perrin v. United States, 444 U.S. 37, 42 (1979).  Though the FSA includes a section devoted to definitions, the terms "term of imprisonment" and "serving a sentence for a conviction" are not included on that list.  See 18 U.S.C. § 3635.  The court therefore interprets those terms according to

their ordinary, contemporary, common meaning and finds that "serving a sentence of conviction" and "term of imprisonment" mean the same thing: an inmate has been convicted of a criminal offense, and a court has sentenced him or her to a term of incarceration. [9] See Huerta v. Cordova, 2023 WL 8627542, at *4 (N.D. Tex. Dec. 13, 2023). The court's conclusion is bolstered by similar reasoning from persuasive authority. See, e.g., id. at *3–4; Wold v. Fed. Bureau of Prisons, 2018 WL 4906273, at *4–6 (D.S.D. Oct. 9, 2018).

Despite finding that "term of imprisonment" and "serving a sentence for a conviction" share one meaning, the court concludes that the plain text of the statutory provision remains unclear because § 3632(d)(4)(D) is silent as to the eligibility of prisoners convicted of multiple offenses—some eligible and others ineligible for time credits. See 18 U.S.C. § 3632(d)(4)(D). Considering this ambiguity, the "statutory language must be read in the context of the BOP's statutory obligations for computing sentences." Huerta, 2023 WL 8627542, at *3; see also McCarthy v. Bronson, 500 U.S. 136, 139 (1991) ("However, statutory language must always be read in its proper context."); South Carolina v. U.S. Army Corps of Eng'rs, 66 F.4th 189, 196 (4th Cir.

---

[9] For the sake of completeness, this court paraphrases and adopts those courts' analysis. Petitioner rightly identifies that § 3584(c) speaks of aggregating "terms of imprisonment," not "sentences." "This [too] is a distinction without a difference. Both 'term of imprisonment' and 'sentence' are used interchangeably to refer to a period of incarceration imposed for violation of the law." Wold v. Fed. Bureau of Prisons, 2018 WL 4906273, at *6 (D.S.D. Oct. 9, 2018). "Imprison" means to put in as if in prison, to confine. See https://www.merriam-webster.com/dictionary/imprisonment (last checked May 9, 2024). "Sentence" has as one of its definitions a "judgment, specifically one formally pronounced by a court or judge in a criminal proceeding and specifying the punishment to be inflicted upon the convict" and "the punishment so imposed." See https://www.merriam-webster.com/dictionary/sentence (last checked May 9, 2024). A "sentence" specifies punishment. Id. Where the "sentence" includes confinement, the "sentence" includes a "term of imprisonment."

2023) (quoting <u>Roberts v. Sea-Land Servs., Inc.</u>, 566 U.S. 93, 101 (2012)) ("Because statutory language 'cannot be construed in a vacuum, it is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (alterations adopted and internal quotation marks omitted)).  Thus, the court considers the appropriate statutory context.

One such statutory obligation is found at 18 U.S.C. § 3584(c).  That provision provides: "Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c).  "Administrative purposes" includes not only the computation of sentences, but also the discretionary administrative functions such as determining a "current offense" for early release eligibility under 18 U.S.C. § 3621(e).  <u>See</u> <u>Moreno v. Ives</u>, 842 F. App'x 18, 20–22 (9th Cir. 2020) ("Insofar as [the petitioner] argues that § 3584(c) is limited to sentence computation, no such limit exists in the language of the statute, and other courts have recognized that the statute applies to all administrative determinations made by BOP" (citation omitted)).  Because the BOP is required to aggregate terms of imprisonment for administrative purposes, it is reasonable for the BOP to apply the aggregation rule to 18 U.S.C. § 3632(d)(4)(D) and conclude that if one of the aggregated convictions precludes the inmate from earning time credits, the entire aggregated sentence has the same effect.  Bonnie has offered no statute or caselaw to support a contrary interpretation.

Instead, Bonnie argues that his interpretation of FSA time credits is correct based on the statutory context of other provisions within the FSA.[10]  See ECF Nos. 54 at 8–9; 39 at 14–15.  In response, the government emphasizes that the relevant statutory context is not merely the language of the FSA but also the pre-existing statutory obligations that governed administration of prison sentences at that time.[11]  See ECF No. 58 at 3.  In reply, Bonnie argues that § 3584 does not establish that multiple sentences, especially those imposed to run consecutively, will lose their separate character.[12]  ECF No. 54 at 10–12.

_____

[10] Namely, Bonnie contrasts the ineligibility provisions of § 3632(d)(4)(D) with the terminally ill offender ineligibility provisions that were also included in the FSA. ECF Nos. 54 at 8–9; 39 at 14–19.  In relevant part, the FSA modified the previously enacted Second Chance Act of 2007's pilot program for eligible elderly and terminally ill offenders, 34 U.S.C. § 60541.  Bonnie highlights that unlike the FSA time credit's exclusion provision, the terminally ill offender exclusion expressly applies to a defendant convicted of multiple offenses, so long as any one of the offenses is listed as a disqualifying offense.  ECF No. 39 at 15 (citing 34 U.S.C. § 60541).

[11] The government emphasizes that Bonnie misinterprets Congress's silence regarding multiple convictions and the ineligibility provision of the FSA.  ECF No. 58 at 3.  It highlights that "Congress's silence regarding how aggregated sentences would be treated under the FSA is not a reflection that § 3584(c) was to be ignored; instead, it was a reflection that § 3584(c) already existed, already controlled in this situation, and was already sufficient to guide the BOP."  Id. (citing Walton, 2023 WL 6283298, at *2).  In other words, "[t]here was no reason for Congress to say anything within the FSA about how consecutive sentences were to be regarded by the BOP, because Congress had already said everything it needed to say within § 3584(c)."  Id. (citing Walton, 2023 WL 6283298, at *2).

[12] Bonnie emphasizes that to hold as much would require prisoners to serve a term of imprisonment that exceeds the statutory maximum for certain offenses like his supervised release violation.  ECF No. 54 at 11.  Moreover, BOP and the Parole Commission's practice is instructive because parole is determined by the statute of conviction—not by the BOP.  Id.  While the Parole Commission has long aggregated sentences for the purposes of calculating "good time" and to set a parole eligibility date, see 28 C.F.R. § 2.5, that aggregation does not deprive the sentences of their distinct parole implications: the aggregation of a parolable sentence with a non-parolable sentences does not render the entire sentence non-parolable, ECF No. 54 at 11–12.  Similarly, the BOP de-aggregates sentences to comply with a bilateral international treaty that allows certain types of sentences imposed in the United States on Mexican nationals

The Supreme Court has directed courts to "interpret the statute as a symmetrical and coherent regulatory scheme," and to "fit, if possible, all parts into an harmonious whole." Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (internal quotation marks and citations omitted). "Similarly, the meaning of one statute may be affected by other Acts." Id. It is therefore unsurprising that the government's position is echoed and mirrored in many court decisions that have concluded that when Congress enacted the FSA in December 2018, it did so against the backdrop of existing statutes, including § 3584(c). See, e.g., Satizabal v. Edge, 2023 WL 5746932, at *1 (E.D. Ark. Sept. 6, 2023) (referencing courts' previous incorporation of § 3584(c) in analysis of residential drug abuse program ("RDAP") statutes); Dahda v. Hudson, 2023 WL 2815920, at *2 (D. Kan. Mar. 7, 2023) ("[18 U.S.C. § 3584(c)] was the existing law in 2018 when Congress passed the FSA, and thus the FSA's eligibility requirements must be considered in light of that existing statutory scheme."); Giovinco v. Pullen, 2023 WL 1928108, at *2–4 (D. Conn. Feb. 10, 2023) ("Thus, this provision must be read in the context of the BOP's statutory obligation to aggregate concurrent and consecutive sentences for administrative purposes."). Consequently, Bonnie's suggestion to consider other provisions of the FSA while overlooking preexisting statutes regulating the BOP's administration of the prison system—including widely used and understood definitions arising from those statutes—misses the mark. See ECF Nos. 54 at 8–9; 39 at 14–19.

---

to be served in Mexico. Id. at 12. Bonnies seeks to extend that analysis to the application of FSA time credits for prisons serving sentences for eligible and ineligible offenses. Id.

18

Moreover, § 3584(c)'s directive to aggregate a term of imprisonment for administrative purposes should be considered alongside Congress's broad delegation to the BOP to manage prisoner's sentences, including the calculation of an inmate's term of imprisonment—which implicates the eligibility provisions for time credits included in § 3632(d)(4)(D).  See, e.g., Teed v. Warden Allenwood FCI Low, 2023 WL 4556726, at *2 (3d Cir. July 17, 2023) ("Calculation of an inmate's term of imprisonment is widely recognized as an 'administrative purpose' well within the BOP's responsibilities as charged by Congress."), cert. denied, 144 S. Ct. 873 (2024); Williams v. FCI Berlin, 2023 WL 5961688, at *4 (D.N.H. Aug. 1, 2023), report and recommendation adopted, 2023 WL 5959740 (D.N.H. Sept. 13, 2023) ("Reasoning that the BOP's sentence calculations and eligibility determinations are administrative functions, . . . courts have construed 18 U.S.C. § 3632(d)(4)(D) together with 18 U.S.C. § 3584(c).").  In other words, "[d]eciding whether a prisoner is ineligible to receive FSA credits is an 'administrative' decision." Frommie v. Fed. Bureau of Prisons, 2022 WL 18399537, at *3 (D.S.D. Aug. 23, 2022), report and recommendation adopted, 2022 WL 18399536 (D.S.D. Nov. 30, 2022). Section 3584(c) provides that, "for administrative purposes," "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated . . . as a single, aggregate term of imprisonment."  18 U.S.C. § 3584(c).  Consequently, "[t]he BOP's treatment of [petitioner's] sentences as a 'single, aggregate term of imprisonment' is supported by Congressional enactment."  Frommie, 2022 WL 18399537, at *3.

The court finds that the eligibility restrictions identified in § 3632(d)(4)(D) must be read in the context of the BOP's preexisting statutory obligation to aggregate concurrent and consecutive sentences for administrative purposes.  This harmonizes the

ambiguity of the FSA not only with statutory context but also with previous Supreme Court decisions considering the BOP's aggregation mandate. See Silva, 2024 98212, at *2; cf. Payton v. Rowe, 391 U.S. 54, 67 (1968) (holding that a prisoner incarcerated on multiple sentences is "in custody" for purposes of habeas relief on all sentences); Johnson v. United States, 529 U.S. 694, 700 (2000) (concluding that a defendant's original sentences and a subsequent sentence he received for revocation of supervised release were both considered one sentence after aggregation).

Courts "don't 'resort to legislative history to cloud a statutory text that is clear.'" South Carolina, 66 F.4th at 197 (quoting Ratzlaf v. United States, 510 U.S. 135, 147–48 (1994)). Upon finding that the statutory context clearly establishes that the BOP is required to administratively aggregate sentences—implicating the sentence management requirements imposed by the FSA—the court finds that the BOP's interpretation accords with the plain language and statutory context. See id. Consequently, the court need not delve into the depths of the FSA's purpose.[13] See id.

In sum, the court finds that the plain text and statutory context of the FSA indicate Congress's intention that an inmate convicted of multiple offenses, at least one of which is ineligible to earn time credits under the FSA, is ineligible to earn time credits under the FSA because the BOP is statutorily mandated to aggregate the sentence.

---

[13] Bonnie argues that construing § 3632(d)(4)(D) broadly alongside the aggregation mandate in § 3584(c), runs contrary to the FSA's purpose. ECF No. 54 at 12–13 (citing Lallave v. Martinez, 635 F. Supp. 3d 173, 189–90 (E.D.N.Y. 2022)). That decision also notes that "courts are instructed to turn to legislative history only after 'the plain language and canons of statutory interpretation fail to resolve statutory ambiguity.'" Lallave, 635 F. Supp. 3d at 189 (quoting United States v. Dauray, 215 F.3d 257, 264 (2d Cir. 2000)). Therefore, since the court resolves the statutory ambiguity through analysis of the plain language and canons of statutory interpretation, it need not reach Bonnie's arguments as to the statute's purpose.

## 2. Precedent

Precedent supports this conclusion. The court first notes that there is no direct binding precedent from either the Fourth Circuit or the Supreme Court on this exact question.[14] The court has identified three on-point district court decisions in the Fourth Circuit that inform this analysis—each holding that a petitioner is ineligible to earn FSA time credit when serving an aggregate term of imprisonment that includes a sentence for a § 924(c) conviction. See Mancillas v. Fed. Bureau of Prisons, 2023 WL 5404229, at *5 (D. Md. Aug. 22, 2023); Banks v. King, 2023 WL 8242450, at *4 (E.D.N.C. Nov. 28, 2023); Richardson v. Warden FCI Edgefield, 2024 WL 1862195, at *5 (D.S.C. Feb. 8, 2024), report and recommendation adopted, 2024 WL 1861555 (D.S.C. Apr. 29, 2024). Nationally, three circuits have opined on this issue—the Third Circuit, the Sixth Circuit, and the Eighth Circuit—and each has held that the BOP did not err by aggregating the terms of imprisonment and finding an ineligible offense made the petitioner ineligible for FSA time credits even when that ineligible offense was imposed consecutive to other sentences. See Teed, 2023 WL 4556726; Keeling v. Lemaster, 2023 WL 9061914 (6th Cir. Nov. 22, 2023); Sok v. Eischen, 2023 WL 5282709 (8th Cir. Aug. 17, 2023).

---

[14] The parties identify that the Fourth Circuit recently issued an unpublished per curiam opinion affirming a district court's decision that a § 2241 petitioner was ineligible for time credits where he was serving a sentence for eligible drug offenses and for an ineligible § 924(c) conviction. ECF Nos. 54 at 9 n.12; 58 at 2. That decision affirmed the district court's analysis finding that the prisoner-petitioner was ineligible for sentencing time credits because of his § 924(c) conviction. See McNeill v. Ramos, 2023 WL 6442551, at *1 (4th Cir. Oct. 3, 2023). The Fourth Circuit opinion was five sentences long, only one of which related to the question of time credits. Id. Bonnie contends that this decision is unpersuasive and that it was made in error because it "begin[s] and end[s] [its] analysis with 18 U.S.C. § 3584(c), with no explanation of why the text of the First Step Act itself does not govern eligibility." ECF No. 54 at 9 n.12. Nevertheless, the court finds that this short decision further supports the undersigned's conclusion as to Bonnie's ineligibility for time credits.

Unsurprisingly, the government relies heavily on the large body of persuasive decisions which have held that the BOP has the discretion to aggregate eligible and ineligible sentences imposed by sentencing courts in its analysis of which prisoners may earn FSA time credits. ECF Nos. 20 at 6–11; 43 at 5–10; 58 at 2–4, 6. In contrast, Bonnie emphasizes that all of those decisions should be unpersuasive because they are not grounded in principles of statutory interpretation, they relied on laws which predated the FSA,[15] they erroneously invoked <u>Chevron</u>, and often were based on petitions brought by <u>pro se</u> prisoners. <u>See</u> ECF Nos. 39 at 26–29; 54 at 3, 14, 16–18. At the end of the day, Bonnie does not identify a single case which finds in his favor on this specific issue. <u>See</u> ECF Nos. 39 at 4 n.7, 21–22, 24–29; 54 at 9 n.12, 16–18. The government highlights as much. <u>See</u> ECF No. 58 at 1 ("[Bonnie] asks this Court to find that every other court

---

[15] Bonnie argues that the government's reliance on caselaw that draws analogies to courts' previous incorporation of § 3584(c) to interpretation of RDAP is fundamentally flawed. <u>See</u> ECF Nos. 39 at 19–20; 54 at 16–18. Namely, the residential drug abuse program ("RDAP") differs from the FSA because the language included in RDAP is fully discretionary:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [residential substance abuse] treatment program <u>may</u> be reduced by the [BOP], but such a reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). In contrast, the FSA provides that time credits "shall be earned," 18 U.S.C. § 3632(d)(4)(A); and that they "shall be applied," 18 U.S.C. § 3632(d)(4)(C). When the Supreme Court considered RDAP's mandate, it concluded that "[w]hen an eligible prisoner successfully completes drug treatment, the [BOP] thus <u>has the authority, but not the duty</u>, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." <u>Lopez v. Davis</u>, 531 U.S. 230, 241 (2001) (emphasis added). In reaching that conclusion, the Supreme Court contrasted the RDAP statute's use of the permissive "may" with the discretion-less "shall" elsewhere in the statute. <u>Id.</u> Thus, Bonnie urges the court to find those cases incorporating § 3584(c) based on the courts' longstanding practice of doing so in RDAP cases to be erroneous because the permissive language of the RDAP statute conflicts with the mandatory language of the FSA's time credit eligibility provisions. ECF Nos. 39 at 19–20; 54 at 17–18.

nationwide that considered this issue conducted an incorrect analysis in reaching the same result Magistrate Judge Rogers reached in his R&R."), at 2 ("[Bonnie] cites to no case on point that supports his position."); see also ECF Nos. 43 at 1.

In fact, a detailed review of court cases across the country suggests that Bonnie's circumstances are neither novel nor unique. For example, other courts have considered whether a petitioner who violated supervised release of his or her § 924(c) conviction and further committed additional eligible drug crimes to nonetheless be ineligible for FSA time credits. See, e.g., Dahda, 2023 WL 2815920, at *1; Mancillas, 2023 WL 5404229, at *1; Banks, 2023 WL 8242450, at *1. Additionally, other courts have considered the eligibility of a prisoner serving a prison sentence for two separate judgments, only one of which included an ineligible offense, and found that petitioner entirely ineligible for FSA time credits. See, e.g., Williams, 2023 WL 5961688, at *3–4. This is consistent with caselaw where a petitioner imprisoned for an eligible offense is thereafter convicted of the ineligible offense of possession of contraband in prison—courts have found that petitioner ineligible for FSA time credits in aggregate. See, e.g., Satizabal, 2023 WL 5746932, at *1 (report and recommendation); Limbrick v. Rivers, 2023 WL 8481850, at *1–2 (N.D. Tex. Oct. 13, 2023), report and recommendation adopted, 2023 WL 8482886 (N.D. Tex. Dec. 7, 2023); Ulloa v. Cruz, 2024 WL 1117092, at *1 (M.D. Pa. Mar. 14, 2024). To be sure, Bonnie is sentenced with two separate judgments, only one of which includes an ineligible offense, but under the plain language of the statute read in its

statutory context, that ineligible offense impacts his entire sentence such that he is

ineligible for FSA time credits.[16]

## IV.  CONCLUSION

For the foregoing reasons, the court **ADOPTS** the report and recommendation,

**GRANTS** the motion for summary judgment, and **DENIES** the petition for writ of

habeas.

---

[16] The court considers whether the BOP's interpretation of the FSA is "reasonable" if, and only if, the court's finds that the statute is ambiguous.  See Julmice, 29 F.4th at 207 (citing Prudencio, 669 F.3d at 480).  Upon finding the statute unambiguous, the court need not reach the question of whether BOP's interpretation was reasonable.  See id.  Nevertheless, the court alternatively finds that even if 18 U.S.C. § 3632(d)(4)(D) were ambiguous, the BOP's interpretation as to that statutory gap is reasonable and entitled to deference.  See Chevron, 467 U.S. at 843.  At the first step, the court found the statute unambiguous as to a prisoner's eligibility for FSA time credits where a prisoner has multiple offenses or multiple sentences running consecutively where some of those offenses are eligible for FSA time credits, and others are ineligible.  See Dahda, 2023 WL 2815920, at *2.  However, if the court were to reach the second step, the court would find that the administering agency—the BOP—has filled the statutory gap in a reasonable way considering Congress's design.  See Lopez v. Davis, 531 U.S. 230, 242 (2001).

Several courts have held that the statute is ambiguous.  See, e.g., Sok v. Eischen, 2022 WL 17156797, at *3 (D. Minn. Oct. 26, 2022) ("The terms of § 3632(d)(4)(D) 'do not directly answer this question' and '[c]ontext does not clear things up' which leaves the Court 'with an ambiguous provision.'" (quoting Voigt v. U.S. Env't Prot. Agency, 46 F.4th 895, 901 (8th Cir. 2022))), report and recommendation adopted 2022 WL 17128929 (D Minn. Nov. 22, 2022), aff'd 2023 WL 5282709 (8th Cir. Aug. 17, 2023); Mancillas, 2023 WL 5404229, at *5 (noting that ambiguity exists as what was meant by "serving a sentence" for certain convictions in the eligibility provision included at 18 U.S.C. § 2632(d)(4)(D)).  Upon finding ambiguity, those courts each found the BOP's interpretation of the statute to be reasonable, particularly considering § 3584(c)'s requirement that consecutive sentences be treated as a single, aggregate sentence for administrative purposes.  See, e.g., Dahda, 2023 WL 2815920, at *2; Sok, 2022 WL 17156797, at *5.  The court follows and adopts the analysis of other courts.  As such, had the court found the FSA ambiguous, it would have granted the motion for summary judgment on the second step of the Chevron analysis.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 9, 2024**

**Charleston, South Carolina**